1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

PETE IBARRA III,

                Plaintiff,

        v.

SNOHOMISH COUNTY, et al.,

              Defendants.

CASE NO. C16-0317JLR

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

15

## I.   INTRODUCTION

16

17

18

19

20

21

22

      This matter comes before the court on Defendants Snohomish County (the

"County"), Marshal Kathleen Marino, and Marshal James Simoneschi's ("the Marshals")

motion for summary judgment.  (Mot. (Dkt. # 10); *see also* Reply (Dkt. # 19).)

Defendants seek dismissal with prejudice of Plaintiff Pete Ibarra III's claims against

them.  (*See* Mot.)  Mr. Ibarra opposes the motion.  (*See* Resp. (Dkt. # 17).)  The court has

considered the motion, all submissions filed in support thereof and opposition thereto, the

ORDER- 1

1   balance of the record, and the applicable law.  Being fully advised,[1] the court GRANTS

2   in part and DENIES in part Defendants' motion for summary judgment for the reasons

3   set forth below.

4                               **II.   BACKGROUND**

5          This case arises out of an encounter between Mr. Ibarra and County law

6   enforcement that occurred at the County courthouse complex in Everett, Washington, on

7   April 15, 2015.  (*See* Compl. (Dkt. # 1) ¶¶ 11-19; Ibarra Decl. (Dkt. # 18) ¶¶ 3-9.)  Mr.

8   Ibarra alleges that on that date he was at the courthouse "to obtain the court clerk's

9   signature on some anti-harassment materials for a case" he was pursuing.  (Ibarra Decl.

10  ¶ 3.)  He alleges that after he obtained the paperwork he sought, he was on his way out of

11  the building when two uniformed marshals[2] approached and informed him that their

12  supervisor wanted to speak with him.  (*Id.* ¶¶ 4-5.)  Their supervisor, Marshal Marino,

13  explained to Mr. Ibarra that an attorney currently in trial in the courthouse complex,

14  Cassandra Lopez de Arriaga, had reported that Mr. Ibarra was stalking her.  (*See id.* ¶ 5;

15  Marino Decl. (Dkt. # 15) ¶¶ 5-7.)  Marshal Marino asked Mr. Ibarra to leave the

16  courthouse.  (*See* Ibarra Decl. ¶ 5; Marino Decl. ¶ 7; Simoneschi Decl. (Dkt. # 13) ¶ 4.)

17         Defendants relate the following series of events leading up the initial encounter

18  between Mr. Ibarra and law enforcement:   Ms. Lopez represented Mr. Ibarra in a matter

19  _____

20         [1] No party has requested oral argument, and the court deems it unnecessary to the
    disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

21         [2] Based on the declarations from the Marshals, the court infers that County marshals are
22  responsible for security and law enforcement at the County courthouse complex.  (*See* Marino
    Decl. (Dkt. # 15) ¶ 2; Simoneschi Decl. (Dkt. # 13) ¶ 2.)

in the fall of 2014.  (Lopez Decl. (Dkt. # 12) ¶ 3.)  After the representation concluded, Mr. Ibarra began sending Ms. Lopez flowers and gifts and showing up at her office without an appointment or business to transact.  (*Id.*)  Ms. Lopez informed Mr. Ibarra that she wanted his behavior to stop and did not want any further contact with him.  (*Id.*)  Mr. Ibarra, however, continued his behavior, including after Ms. Lopez moved to a new office in February 2015.  (*Id.*)

On April 15, 2015, Ms. Lopez was in trial in the Mission building (Lopez Decl. ¶ 4), which is adjacent and connected to the main courthouse via a two-story, enclosed breezeway (Marino Decl. ¶ 4).  She saw Mr. Ibarra in front of the courthouse as she arrived in the morning.  (Lopez Decl. ¶ 4.)  She encountered him again in the lobby after lunch, at which point he attempted to talk to her.  (*Id.*)  Later in the afternoon, during a break in trial, she saw him a third time, and he walked towards her.  (*Id.*)  Ms. Lopez returned to the courtroom out of fear and reported the matter to a deputy prosecutor who then called the County marshals.  (*Id.*)  Marshal Marino responded, whereupon Ms. Lopez related her history with Mr. Ibarra and what had occurred that day.  (*Id.*; *see* Marino Decl. ¶ 5.)  Ms. Lopez stated that she did not want Mr. Ibarra around the courtroom where she was working because she feared for her safety.  (Lopez Decl. ¶ 5; *see* Marino Decl. ¶ 5.)  This conversation prompted Marshal Marino to locate Mr. Ibarra in the courthouse complex and go to speak with him.  (*See* Marino Decl. ¶ 6.)

From this point, Defendants' and Mr. Ibarra's accounts of events diverge.  Mr. Ibarra asserts that after a brief discussion of the reason why she stopped him, Marshal Marino ordered him to leave the courthouse and never return.  (*See* Ibarra Decl. ¶ 5.) Mr.

1  Ibarra states that he responded that he would come back if he had further business in the

2  courthouse.  (*Id.*)  Marshal Marino then told him "not to come back in this Courthouse

3  little man."[3]  (*Id.*)  Mr. Ibarra alleges that Marshal Marino descended the stairs toward

4  him, grabbed him by his arm and shirt, and forced his arm behind his back.  (*Id.*)  He

5  alleges that Marshal Simoneschi then came up behind him, grabbed his hair, and lifted

6  him up off his feet while Marshal Marino kicked at his legs. (*See id.*; Simoneschi Decl.

7  ¶ 4; Marino Decl. ¶ 8.)  Mr. Ibarra states that he clung to the railing to keep from falling

8  (Ibarra Decl. ¶ 5) but the Marshals, assisted by at least one County corrections officer,

9  eventually forced him down to the first floor where they threw him to the ground, kneed

10  him in the back, lifted his head up by the ear, and then slammed his head and face into

---

12  [3] Mr. Ibarra alleges in his complaint that Marshal Marino said "not to come back to this
courthouse little man, at least I do not have to portray being a man." (Compl. ¶ 13.)  He made an
13  identical allegation in the claim he submitted to the County before filing this lawsuit.  (Bides
Decl. (Dkt. # 16) ¶ 4, Ex. A ("Claim") Attach. 1 at 1.)  He changes his story, however, in his
14  opposition to Defendants' motion for summary judgment.  Mr. Ibarra now claims that Marshal
Marino said only "do not come back in this courthouse little man," and that Mr. Ibarra then
responded with "at least I do not have to portray being a man."  (Ibarra Decl. ¶ 5; Resp. at 3.)
15      Mr. Ibarra conveniently recasts one of his claims in a parallel manner.  Whereas in his
complaint he alleges that Defendants retaliated against him "because he requested that he be
16  allowed to conduct his personal business in a public place" (Compl. ¶ 30), he now asserts that
Defendants retaliated against him for insulting Marshal Marino by saying "at least I do not have
to portray being a man" (Ibarra Decl. ¶ 5; *see* Resp. at 3, 15).
17      The court finds these parallel changes constitute an attempt by Mr. Ibarra to contradict
his complaint in order to survive summary judgment.  Accordingly, the court disregards the
18  portion of Mr. Ibarra's declaration in which he contradicts his complaint.  *See Block v. City of
L.A.*, 253 F.3d 410, 419 n.2 (9th Cir. 2001) (citing *Radobenko v. Automated Equip. Corp.*, 520
19  F.2d 540, 544 (9th Cir. 1975)) ("A party cannot create a genuine issue of material fact to survive
summary judgment by contradicting his earlier version of the facts."); *Cline v. Indus. Maint.
20  Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000) ("Both judges correctly held that
Appellants could not contradict their earlier allegations in an effort to survive summary
21  judgment."); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (quoting *Religious Tech. Ctr.
v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989)) (holding that judicial estoppel bars a party from
22  making a factual assertion in a legal proceeding "which directly contradicts an earlier assertion
made in the same proceeding or a prior one").

1   the ground before handcuffing him (*see id.* ¶ 6; Scott Decl. (Dkt. # 14) ¶ 4; Simoneschi

2   Decl. ¶ 4; Marino Decl. ¶ 8).  Mr. Ibarra claims that the Marshals' treatment of him

3   resulted in "leg contusions" and hurt his back, head, and neck.  (Ibarra Decl. ¶ 7.)  He

4   states that the knee to his back caused him to defecate in his pants.  (*See id.* ¶ 8.)[4]

5          Having handcuffed Mr. Ibarra, Marshal Marino transported him to the County jail

6   and booked him for disorderly conduct.  (Marino Decl. ¶ 9.)  Nurse Autumn Kostelecky

7   interviewed and assessed Mr. Ibarra upon his arrival at the jail.  (*See* Kostelecky Decl.

8   (Dkt. # 11) ¶¶ 2-4.)  Although Ms. Kostelecky avers that she "did not observe any

9   contusions, erythema, edema, or abrasions to [Mr. Ibarra's] shin or head" (*Id.* ¶ 5), Mr.

10  Ibarra asserts that he told Ms. Kostelecky that the Marshals had injured him (Ibarra Decl.

11  ¶ 8).  Ms. Kostelecky states that she did not observe that Mr. Ibarra defecated in his pants

12  and that he did not inform her he had done so.  (Kostelecky Decl. ¶ 5.)  Mr. Ibarra

13  explains, "I did not tell the nurse that I pooped in my pants because I was too

14

15  _____

16      [4] Defendants present the following alternate version of the events in the above paragraph:
    After Marshal Marino asked Mr. Ibarra to leave, Mr. Ibarra began walking down the stairs but
17  then stopped, turned around, squared up to Marshal Marino, and stared at her.  (Marino Decl.
    ¶¶ 7-8.)  Marshal Marino interpreted this stance as a "pre-attack" posture and approached Mr.
18  Ibarra to escort him out.  (*Id.* ¶ 8.)  She ordered Mr. Ibarra to leave again, but he "refused to
    leave and stood in the stairwell partially blocking the traffic." (*Id.*)  She and Marshal Simoneschi
19  then took Mr. Ibarra by the arm, but he resisted.  (*Id.*)  He grabbed the handrail, screamed, and
    tensed his muscles to prevent the Marshals from moving him.  (*Id.*)  With the assistance of a
20  corrections officer, the Marshals brought Mr. Ibarra down to the ground floor where they put him
    face down on the carpet and handcuffed him.  (*Id.* ¶ 9; Simoneschi Decl. ¶ 4; Scott Decl. ¶ 4.)
21  Defendants deny that the Marshals pulled Mr. Ibarra's hair, kicked him, threw him to the ground,
    kneed him, or slammed his head into the ground.  (*See* Marino Decl. ¶ 10; Simoneschi Decl. ¶ 5;
22  Scott Decl. ¶ 5.)  They also deny that Mr. Ibarra defecated in his pants.  (*See* Marino Decl. ¶ 10;
    Simoneschi Decl. ¶ 5; Scott Decl. ¶ 5.)

1  embarrassed . . . ." (Ibarra Decl. ¶ 8.)  After approximately five hours, Mr. Ibarra posted

2  bond and was released from jail.  (*Id.* ¶ 9.)  No charges were filed against him.  (*Id.* ¶ 11.)

3        Two weeks later, Mr. Ibarra visited a physician's assistant named David Bender.

4  (Claim Attach. 3 at 1.)  Mr. Bender diagnosed Mr. Ibarra with the following injuries:  (1)

5  head contusion, (2) multiple leg contusions, and (3) lumbar strain.  (*Id.* at 2.)  Mr.

6  Bender's notes do not indicate to extent of his examination of Mr. Ibarra (*see id.* at 1-4),

7  and neither side has submitted deposition testimony or a declaration from Mr. Bender

8  (*see* Dkt.).

9        Mr. Ibarra filed this lawsuit on March 3, 2016.  (Compl. at 1.)  He asserts federal

10 claims under 42 U.S.C. § 1983 for unlawful seizure and arrest without probable cause in

11 violation of his Fourth Amendment rights; excessive force in violation of his Fourth

12 Amendment rights; and retaliatory arrest in violation of his First, Fourth, and Fifth

13 Amendment rights.  (Compl. at 5-8.)  He seeks to hold the County liable for these alleged

14 violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (Compl.

15 at 8-10.)  In addition, he asserts state law claims for false arrest and imprisonment, assault

16 and battery, and intentional infliction of emotional distress.  (*Id.* at 10-11.)  He seeks to

17 hold the County vicariously liable for the alleged state law violations.  (*Id.* at 12.)

18        Defendants filed their motion for summary judgment on June 2, 2016.  (Mot. at 1.)

19 They argue that summary judgment is appropriate on all of Mr. Ibarra's claims because

20 the Marshals are entitled to statutory, qualified, and state common law immunity.  (*Id.* at

21 1-2.)  Further, Defendants argue that Mr. Ibarra lacks evidence of elements of several of

22 his claims.  (*See, e.g.*, *id.* at 2.)  In support of their motion, Defendants submit

1  declarations and accompanying exhibits from their counsel, the Marshals, Ms.

2  Kostelecky, Correctional Officer Jared Scott, and Ms. Lopez.  (*See* Bides Decl. (Dkt.

3  # 16); Marino Decl.; Simoneschi Decl.; Kostelecky Decl.; Scott Decl.; Lopez Decl.)  Mr.

4  Ibarra opposes the motion, arguing that genuine issues of material fact preclude summary

5  judgment.  (*See* Resp.)  Beyond his response brief, Mr. Ibarra submits only his own

6  two-page declaration.  (*See* Ibarra Decl.)  Defendants' motion for summary judgment is

7  now before the court.

8  **III.   DISCUSSION**

9  **A.   Standard**

10       Summary judgment is appropriate if the evidence shows "that there is no genuine

11  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

12  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

13  *Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the

14  outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

15  factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact

16  finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986,

17  992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

18       The moving party bears the initial burden of showing there is no genuine issue of

19  material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S.

20  at 323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can

21  show the absence of an issue of material fact in two ways:  (1) by producing evidence

22  negating an essential element of the nonmoving party's case, or (2) by showing that the

nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the ultimate burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id.* at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Furthermore, the court may consider as evidence only materials that are capable of being presented in an admissible form. *See* Fed. R. Civ. P. 56(c)(2); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "Legal memoranda and oral argument are

1   not evidence and do not create issues of fact capable of defeating an otherwise valid

2   summary judgment." *Estrella v. Brandt*, 682 F.2d 814, 819-20 (9th Cir. 1982); *see also*

3   *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory

4   allegations unsupported by factual data cannot defeat summary judgment.").  Nor can the

5   plaintiff "defeat summary judgment with allegations in the complaint, or with

6   unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*,

7   343 F.3d 1107, 1112 (9th Cir. 2003).

8   **B.   Defendants' Motion**

9        Mr. Ibarra asserts federal claims for unlawful seizure and arrest without probable

10  cause, excessive force, retaliatory arrest, and local government liability.  (*See* Compl. at

11  5-8.)  He also brings state law claims for false arrest and imprisonment, assault and

12  battery, intentional infliction of emotional distress, and vicarious liability.  (*See id.* at

13  8-12.)  Defendants argue that summary judgment is appropriate because the Marshals are

14  entitled to qualified immunity against Mr. Ibarra's federal claims, and statutory and state

15  common law immunity against Mr. Ibarra's state law claims.  (*See* Mot. at 1-2.)  They

16  also contend that Mr. Ibarra lacks evidence to support several of his claims, including his

17  claims against the County.  (*See id.* at 2, 20-21.)  The court begins with Mr. Ibarra's

18  federal claims and then addresses his state law claims.

19        1.   Federal Claims & Qualified Immunity

20        Mr. Ibarra brings his federal claims under 42 U.S.C. § 1983.  (*See* Compl. at 5-10.)

21  In the context of 42 U.S.C. § 1983 claims, "[t]he doctrine of qualified immunity protects

22  government officials 'from liability for civil damages insofar as their conduct does not

1    violate clearly established statutory or constitutional rights of which a reasonable person

2    would have known.'"   *Stanton v. Sims*, --- U.S. ---, 134 S. Ct. 3, 4-5 (2013) (per curiam)

3    (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).   "Qualified immunity gives

4    government officials breathing room to make reasonable but mistaken judgments" and

5    "protects all but the plainly incompetent or those who knowingly violate the law."

6    *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335,

7    341 (1986)).   Accordingly, an officer will be denied qualified immunity in a Section 1983

8    action "only if (1) the facts alleged, taken in the light most favorable to the party

9    asserting injury, show that the officer's conduct violated a constitutional right, and (2) the

10   right at issue was clearly established at the time of the incident such that a reasonable

11   officer would have understood her conduct to be unlawful in that situation."   *Green v.*

12   *City & Cty. of S.F.*, 751 F.3d. 1039, 1051-52 (9th Cir. 2014) (quoting *Torres v. City of*

13   *Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)).

14         Mr. Ibarra asserts Section 1983 claims against the Marshals for unlawful seizure

15   and arrest in violation of the Fourth Amendment; excessive force in violation of the

16   Fourth Amendment; and retaliatory arrest in violation of the First, Fourth, and Fifth

17   Amendments.   (*See* Compl. at 5-8.)   He also seeks to hold the County liable for these

18   alleged violations.   (*See id.* at 8-10.)   The court addresses each of Mr. Ibarra's federal

19   claims in turn.

20   //

21   //

22   //

ORDER- 10

1
        a.  *Unlawful seizure & arrest*[5]

2
       "A claim for unlawful arrest is cognizable under § 1983 as a violation of the

3
Fourth Amendment provided that the arrest was made without probable cause or other

4
justification." *Dubner v. City and Cty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001).  To

5
prove a claim for false arrest or improper seizure of a person under Section 1983, a

6
plaintiff must demonstrate that:  (1) the defendant lacked probable cause to arrest the

7
plaintiff, and (2) the defendant actually arrested the plaintiff.  *Hernandez v. Cty. of*

8
*Marin*, No. C 11-03085, 2012 WL 1207231, at *8 (N.D. Cal. April 11, 2012) (citing

9
*Cabrera v. City of Hunting Park*, 159 F.3d 374, 380 (9th Cir. 1998)).

10
       To comply with constitutional protections, an arrest must be supported by

11
probable cause.  *Adams v. Williams*, 407 U.S. 143, 148-49 (1972).  Probable cause is an

12
objective standard.  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

13
Probable cause exists if "under the totality of circumstances known to the arresting

14
officers, a prudent person would have concluded that there was a fair probability that [the

15
defendant] had committed a crime."  *Grant v. City of Long Beach*, 315 F.3d 1081, 1085

16
(9th Cir. 2002).  Stated another way, probable cause to arrest exists when the officer has

17
knowledge or reasonably trustworthy information sufficient to lead a person of

18
reasonable caution to believe that an offense has been or is being committed.  *Beck v.*

19

20
     [5] Although Mr. Ibarra separates unlawful seizure and arrest into distinct causes of action

21
in his complaint, his complaint fails to make clear how those claims differ (*see* Compl. at 5-6), and neither he nor Defendants make any effort to differentiate between the two causes of action

22
in their respective summary judgment filings (*see* Mot. at 13-14; Resp. at 9-14; Reply at 2-6). Accordingly, the court analyzes these claims together.

*Ohio*, 379 U.S. 89, 91 (1964).  "[I]t is clearly established that an arrest without probable cause violates a person's Fourth Amendment rights."  *Knox v. Sw. Airlines*, 124 F.3d 1103, 1107-08 (9th Cir. 1997) (citing *Kennedy v. L.A. Police Dep't*, 901 F.2d 702, 706 (9th Cir. 1989)).

Defendants argue that the Marshals have qualified immunity with respect to Mr. Ibarra's unlawful seizure and arrest claims because the Marshals had probable cause to arrest Mr. Ibarra for stalking, disorderly conduct, and obstruction.  (Mot. at 13-14; *see also id.* at 8-11.)  Washington law defines misdemeanor stalking as follows:

> (1) A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:
>> (a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and
>> (b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person.  The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and
>> (c) The stalker either:
>>> (i) Intends to frighten, intimidate, or harass the person; or
>>> (ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

RCW 9A.46.110(1).  "Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person." RCW 9A.46.110(4).

The court agrees with Defendants that probable cause existed to arrest Mr. Ibarra for stalking and therefore his arrest did not violate Mr. Ibarra's clearly established Fourth

1    Amendment rights.[6]  Before the Marshals approached Mr. Ibarra, Ms. Lopez informed

2    Marshal Marino that Mr. Ibarra had been following her and sending her unwelcome gifts,

3    that he had continued to do so after she asked him to stop, that Mr. Ibarra was following

4    her around the courthouse complex that day; and that she wanted him to stay away from

5    her because she feared for her safety.  (*See* Lopez Decl. ¶¶ 3-4; Marino Decl. ¶¶ 5-6; *see*

6    *also* Lopez Decl. ¶ 4 (reporting that she was visibly shaking when she returned to the

7    courtroom after seeing Mr. Ibarra for the third time on the day in question).)  When

8    Marshal Marino spoke to Mr. Ibarra, he admitted that Ms. Lopez was his former attorney.

9    (Marino Decl. ¶ 7; *see* Ibarra Decl. ¶ 5.)  Nothing in the record indicates that Ms. Lopez,

10   an attorney and officer of the court, is an untrustworthy source of information or that

11   Marshal Marino had any reason to question her trustworthiness.  (*See* Lopez Decl. ¶ 2.)

12   Accordingly, there is no genuine dispute that Marshal Marino possessed reasonably

13   trustworthy information sufficient to lead a person of reasonable caution to believe that

14   Mr. Ibarra had stalked Ms. Lopez in violation of RCW 9A.46.110(1).  *Beck*, 379 U.S. at

15   91; *see Grant*, 315 F.3d at 1085.

16         Mr. Ibarra objects to this conclusion on the grounds that Washington law generally

17   prohibits a law enforcement officer from making a warrantless arrest for a misdemeanor

18   _____

19   [6] Defendants also argue that the Marshals had probable cause to arrest Mr. Ibarra for
     felony stalking in violation of RCW 9A.46.110(5)(b)(v).  (*See* Reply at 5.)  That statutory
     provision makes it a felony to stalk an attorney in order to retaliate against the attorney for an act
20   performed during the course of his or her official duties or to influence the attorney's
     performance of his or her official duties.  RCW 9A.46.110(5)(b)(v).  The court rejects this
     argument.  Although Mr. Ibarra's alleged stalking victim, Ms. Lopez, is an attorney (Lopez Decl.
21   ¶ 2), Defendants point to no evidence indicating the Marshals had reason to believe Mr. Ibarra's
     treatment of Ms. Lopez was retaliatory or an effort to influence Ms. Lopez in her official duties
22   (*see* Mot.; Reply).

offense committed outside an officer's presence.  (*See* Resp. at 12 (citing RCW 10.31.100).)  Stalking in violation of RCW 9A.46.110(1) is a misdemeanor.  RCW 9A.46.110(5)(a).  The court rejects Mr. Ibarra's argument.[7]  A warrantless arrest that otherwise complies with the Fourth Amendment does not cease to do so because a state statute sets a more protective standard for arrest than probable cause.  *Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("[W]hile States are free to regulate [warrantless] arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."); *see also id.* at 174 ("A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional.").   Moreover, "[t]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment."  *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990); *see Graves v. Mahoning City*, 821 F.3d 772, 778-79 (6th Cir. 2016) (collecting cases); *United States v. McNeill*, 484 F.3d 301, 311 (4th Cir. 2007) (citing *Woods v. City of Chi.*, 234 F.3d 979, 992-95 (7th Cir. 2000); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Fields v. City of S. Hous.*, 922 F.2d 1183, 1189 (5th Cir. 1991); and *Barry*, 902 F.2d at 772) (footnotes added) ("Several other circuits have held that the Fourth Amendment contains

---

[7] The court also rejects Defendants' unsupported assertions that (1) the alleged stalking occurred in Marshal Marino's presence and (2) the Marshals had probable cause to believe Mr. Ibarra was guilty of stalking involving physical harm or threats of harm, thus bringing his conduct within an exception to RCW 10.31.100's general rule on warrantless misdemeanor arrests.  (*See* Reply at 4-5 (citing RCW 10.31.100(1)).)

1   no 'in the presence' requirement, and none have reversed their position in the wake of

2   *Atwater*[8] and *Pringle*.[9]")   Accordingly, that Mr. Ibarra's alleged stalking of Ms. Lopez

3   occurred outside the Marshals' presence has no impact on whether his arrest complied

4   with the Fourth Amendment.

5        Nor is it significant that Marshal Marino arrested and booked Mr. Ibarra for

6   disorderly conduct, not stalking.  As Defendants point out, "an officer's erroneous

7   identification of the crime for which the arrest is being made will not invalidate an arrest

8   if probable cause exists to arrest for a different criminal law violation."  (Mot. at 14 n.6.)

9        [A]n arresting officer's state of mind (except for the facts that he knows) is
         irrelevant to the existence of probable cause.  That is to say, his subjective
10       reason for making the arrest need not be the criminal offense as to which
         the known facts provide probable cause.  As we have repeatedly explained,
11       "'the fact that the officer does not have the state of mind which is
         hypothecated by the reasons which provide the legal justification for the
12       officer's action does not invalidate the action taken as long as the
         circumstances, viewed objectively, justify that action.'"
13
     *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Wren v. United States*, 517 U.S.
14
     806, 812-13 (1996) and *Arkansas v. Sullivan*, 532 U.S. 769 (2001)); *see also id.* at 155
15
     ("Those are lawfully arrested whom the facts known to the arresting officers give
16
     probable cause to arrest.").  As discussed above, the facts known to Marshal Marino
17
     provided probable cause to arrest Mr. Ibarra for stalking.  Accordingly, it is immaterial
18
     that Marshal Marino arrested Mr. Ibarra for disorderly conduct.
19
     //
20

21       [8] *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001).

22       [9] *Maryland v. Pringle*, 540 U.S. 366 (2003).

ORDER- 15

1    Moreover, the undisputed facts show the Marshals could have reasonably believed

2    they had probable cause to arrest Mr. Ibarra for disorderly conduct.  *See Flores v. City of*

3    *Wenatchee*, No. CV-10-0330-EFS, 2012 WL 1799196, at *4 (E.D. Wash. May 17, 2012)

4    (citing *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012)) ("The right to be

5    subjected only to an arrest supported by probable cause is clearly established, but the

6    elements required to satisfy the probable-cause analysis must be clearly established for

7    that particular offense.").  A person can commit disorderly conduct by "[i]ntentionally

8    obstruct[ing] . . . pedestrian traffic without lawful authority."  RCW 9A.84.030(1)(c).

9    No genuine dispute exists that after Marshal Marino told Mr. Ibarra to leave the

10   courthouse, he stopped on the stairs and remained there blocking pedestrian traffic,

11   including after Marshal Marino again ordered him to leave.  (*See* Marino Decl. ¶¶ 7-8;

12   Simoneschi Decl. ¶ 4; Ibarra Decl. ¶ 5.)[10]  Thus, the Marshals had sufficient knowledge

13   to cause a reasonably cautious person to believe that Mr. Ibarra was guilty of disorderly

14   conduct.  *Beck*, 379 U.S. at 91; *see Grant*, 315 F.3d at 1085; RCW 9A.84.030(1)(c).[11]

15   In sum, Mr. Ibarra has a clearly established right to be free from arrests that are

16   not supported by probable cause.  However, no genuine dispute of material fact exists

17   regarding whether the Marshals' conduct violated that right.  The court therefore grants

---

18

19   [10] As discussed above, the court disregards the portion of Mr. Ibarra's declaration in
     which he states that Marshal Marino attacked him immediately after he insulted her.  *See supra*

20   n.3.)  Moreover, even if the court considered that portion of Mr. Ibarra's declaration, Mr. Ibarra
     does not contest the Marshals' assertions that after he was ordered to leave the courthouse he
     remained standing on the stairway obstructing pedestrian traffic.  (*See* Ibarra Decl. ¶ 5.)

21

22   [11] The court declines to address whether the Marshals had probable cause to arrest Mr.
     Ibarra for obstruction because doing so would have no impact on the remainder of the court's
     analysis.

ORDER- 16

1  Defendants summary judgment on and dismisses Mr. Ibarra's claims for unlawful seizure

2  and arrest.

3         b.  *Excessive force*

4         Mr. Ibarra alleges that in effectuating his arrest the Marshals used excessive force

5  in violation of the Fourth Amendment.  (*See* Resp. at 6-9.)  When evaluating Fourth

6  Amendment claims of excessive force, courts ask "whether the officers' actions are

7  'objectively reasonable' in light of the facts and circumstances confronting them."

8  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  This inquiry "requires a careful balancing

9  of the nature and quality of the intrusion on the individual's Fourth Amendment interests

10 against the countervailing governmental interests at stake."  *Id.* at 396.  "The calculus of

11 reasonableness must embody allowance for the fact that police officers are often forced to

12 make split-second judgments—in circumstances that are tense, uncertain, and rapidly

13 evolving—about the amount of force that is necessary in a particular situation."  *Id.* at

14 396-97.  As such, reasonableness is evaluated "from the perspective of a reasonable

15 officer on the scene, rather than with the 20/20 vision of hindsight."  *Glenn v. Wash. Cty.*,

16 673 F.3d 864, 871 (9th Cir. 2011) (citing *Graham*, 490 U.S. at 397).  Police officers

17 "need not avail themselves of the least intrusive means of responding"; rather, they need

18 only act "within that range of conduct [identified] as reasonable."  *Billington v. Smith*,

19 292 F.3d 1177, 1188-89 (9th Cir. 2002).

20        The excessive force analysis involves three steps.  First, a court must "assess the

21 severity of the intrusion on the individual's Fourth Amendment rights by evaluating the

22 type and amount of force inflicted."  *Glenn*, 673 F.3d at 871.  Second, a court must

1    "evaluate the government's interest in the use of force."  *Id.*  At a minimum, three factors

2    inform the government's interest:  "(1) how severe the crime at issue is, (2) whether the

3    suspect posed an immediate threat to the safety of the officers or others, and (3) whether

4    the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Lal v.*

5    *California*, 746 F.3d 1112, 1117 (9th Cir. 2014); *see also Mattos v. Agarano*, 661 F.3d

6    433, 441 (9th Cir. 2011) (noting that these factors are not exclusive and that courts

7    consider "whatever specific factors may be appropriate in a particular case").  Of these

8    the most important is whether the suspect posed an immediate threat to the safety of the

9    officers or others.  *Lal*, 746 F.3d at 1117; *see also Glenn*, 673 F.3d at 872.  Finally, a

10   court must "balance the gravity of the intrusion on the individual against the

11   government's need for that intrusion."  *Id.*

12          Because the excessive force inquiry ordinarily "requires a jury to sift through

13   disputed factual contentions, and to draw inferences therefrom," the Ninth Circuit has

14   emphasized that "summary judgment . . . in excessive force cases should be granted

15   sparingly."  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc).

16   However, the Supreme Court has made clear that, at the summary judgment stage, once a

17   court has determined the relevant set of facts and drawn all inferences in favor of the

18   nonmoving party, the reasonableness of an officer's actions remains a question of law for

19   the court to decide.  *Scott*, 550 U.S. at 381 n.8; *see also Gonzalez v. City of Anaheim*, 747

20   F.3d 789, 801 (9th Cir. 2014) (J. Trott, Kozinski, Tallman, and Bea, dissenting).

21          On this summary judgment record, a reasonable fact-finder could determine that

22   the Marshals violated Mr. Ibarra's clearly established right to be free from excessive

1   force.  The Marshals therefore are not entitled to qualified immunity on Mr. Ibarra's

2   excessive force claim.  Viewing the facts in the light most favorable to Mr. Ibarra and

3   drawing all reasonable inferences in his favor, the court first turns to the type and amount

4   of force used.  While on the stairs, the Marshals grabbed Mr. Ibarra by his arms and shirt,

5   pinned one arm behind his back, lifted him off the ground by his hair, and kicked his legs

6   out from under him.  (Ibarra Decl. ¶ 5.)  Once they transported him to the ground floor,

7   they threw him to the ground, kneed him in the back hard enough to cause him to

8   defecate in his pants, lifted his head up by his ear, and then slammed his head into the

9   floor.  (*See id.* ¶¶ 6, 8.)  This force was non-lethal but substantial in both severity in

10  amount.  *See Blankerhorn v. City of Orange*, 485 F.3d 463, 478-80 (9th Cir. 2007)

11  (discussing a gang tackle, hobble restraints, and punches).

12         In contrast, the government interest in the use of force was minimal.  The crimes

13  at issue—stalking, disorderly conduct, and possibly obstruction—are nonviolent

14  misdemeanors and thus not particularly severe.  *See, e.g.*, *id.* at 481 (misdemeanor

15  trespass).  Defendants argue that stalking is a serious crime because it involves harassing,

16  frightening, or intimidating another person.  (*See* Mot. at 16 (citing RCW 9A.46.010, the

17  legislative statement accompanying RCW ch. 9A.46, which covers a variety of

18  "harassment" offenses, including stalking).)  However, even if the court accepts that

19  nonviolent stalking is a relatively severe misdemeanor, any resulting increase in

20  governmental interest dissipates upon consideration of whether Mr. Ibarra posed an

21  immediate threat to the safety of the Marshals or others—the most important factor in

22  evaluating the government's interest.  *See Lal*, 746 F.3d at 1117.  Under the version of

ORDER- 19

1   events most favorable to Mr. Ibarra, Mr. Ibarra posed little or no immediate threat to

2   anyone's safety.  Although he may have been stalking Ms. Lopez while at the courthouse,

3   at the time the Marshals used force on him he was standing alone on a stairway

4   surrounded by at least two marshals and a corrections officer.  (*See* Ibarra Decl. ¶ 5;

5   Marino Decl. ¶¶ 7-9; Simoneschi Decl. ¶ 5; Scott Decl. ¶ 4.)  He is only five feet and

6   three inches tall and weighs only 145 pounds and was unarmed.  (Marino Decl. ¶ 11, Ex.

7   A ("Marino Report") at 4; *see* Ibarra Decl.; Marino Decl.; Simoneschi Decl.; Scott Decl.)

8   He did not threaten the Marshals or make any attempt to get past them and make his way

9   toward Ms. Lopez.  (*See* Ibarra Decl. ¶ 5.)  As such, a reasonable jury could conclude that

10  Mr. Ibarra posed no immediate threat to the safety of the Marshals, Ms. Lopez, or anyone

11  else.[12]

12          Nor was Mr. Ibarra actively resisting arrest or attempting to evade the marshals by

13  flight.  Viewing the evidence in the light most favorable to Mr. Ibarra, a fact-finder could

14  conclude that in the moments before the Marshals began using force against him, Mr.

15  Ibarra was at most passively resisting their commands to leave the building by standing

16  pat on the staircase.  (*See id.* ¶ 5.)  He attests that even after the Marshals pinned his arm

17  behind his back, lifted him up by his hair, and kicked his legs out from under him, his

18  _____

19          [12] Defendants argue that Mr. Ibarra posed a threat to the marshals.  (*See* Mot. at 17-18.)
    In support of this assertion, they point to Marshal Marino's declaration where she states that after

20  she ordered him to leave Mr. Ibarra turned around and "squared up" to her in a posture she
    interpreted as aggressive.  (*See* Marino Decl. ¶ 8.)  As Mr. Ibarra points out, however, Marshal
    Marino made no mention of Mr. Ibarra's allegedly aggressive posture when she composed her

21  report shortly after the incident.  (*Compare* Marino Report at 3 *with* Marino Decl. ¶ 8.)  Based on
    this inconsistency, a jury could reasonably find Marshal Marino's statements about Mr. Ibarra's

22  alleged aggressive stance not credible.

1   only resistance was to grab ahold of the railing to steady himself.  (*See id.* ¶¶ 5-6.)

2   Although Defendants dispute whether Mr. Ibarra offered resistance while on the

3   staircase, they do not claim Mr. Ibarra resisted once the Marshals had him on the ground

4   floor.  (*See* Marino Decl. ¶¶ 9-10; Simoneschi Decl. ¶ 4; Scott Decl. ¶ 4.)  As discussed

5   above, Mr. Ibarra maintains that the Marshals continued to use force on him after they

6   brought him to the ground floor.  (*See* Ibarra Decl. ¶¶ 6-8); *supra* § II.

7            Balancing the governmental interest in the use of force against the amount of force

8   the Marshals employed against Mr. Ibarra, and viewing the facts in the light most

9   favorable to Mr. Ibarra, a reasonable jury could find the Marshals' use of force

10  unreasonable.  *See Blankenhorn*, 485 F.3d at 478-80.  Moreover, the court concludes that

11  such use of force would have violated clearly established law.  At the time of the incident

12  in question, the law was clearly established that law enforcement officers may not use

13  substantial force—such as kicking, hair pulling, and slamming body parts into hard

14  objects—on passively resisting individuals who do not pose an immediate threat and are

15  suspected of committing only minor offenses.  *See, e.g., Young v. Cty. of L.A.*, 655 F.3d

16  1156, 1168 (9th Cir. 2011); *Blankenhorn*, 485 F.3d at 478-81; *Winterrowd v. Nelson*, 480

17  F.3d 1181, 1184 (9th Cir. 2007); *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 959 (9th

18  Cir. 2000); *Onyenwe v. City of Corona*, 637 F. App'x 370, 371 (9th Cir. 2016); *Coe v.

19  Schaeffer*, No. 213CV00432KJMCKD, 2016 WL 2625994, at *8 (E.D. Cal. May 9,

20  2016); *Rodriguez v. City of Modesto*, No. 1:10-CV-01370-LJO, 2015 WL 1565354, at

21  *28-30 (E.D. Cal. Apr. 8, 2015).  Accordingly, the court determines that the Marshals

22  have not shown they are entitled to qualified immunity on Mr. Ibarra's excessive force

1    claim.  The court therefore denies Defendants' motion for summary judgment with

2    respect to that claim.

3          c.  *Retaliatory arrest*

4          Mr. Ibarra's next federal claim is for retaliatory arrest.  (*See* Compl. at 6-7.)

5    Defendants argue that the court should grant summary judgment on this claim because

6    Mr. Ibarra points to no facts showing they retaliated against him for exercising any

7    constitutional right.  (*See* Mot. at 15.)  The court agrees.  In his opposition, Mr. Ibarra

8    attempts to assert a First Amendment retaliation claim, arguing that he insulted Marshal

9    Marino and that the Marshals arrested him as a result of that speech.  (*See* Resp. at 15.)

10   He supports this argument with his declaration.  (*See* Ibarra Decl. ¶ 5.)  However, as

11   discussed above, Mr. Ibarra's allegations regarding the alleged insult and response

12   contradict the allegations in his complaint and are therefore not part of the factual record

13   the court considers on summary judgment.  *See supra* n.3.  Because Mr. Ibarra points to

14   nothing else in support of this claim (*see* Resp. at 14-15), the court finds he lacks

15   evidence on which to base a retaliation claim and grants summary judgment in favor of

16   Defendants on this claim.

17         d.  *Local government liability*

18         In Mr. Ibarra's final federal claim, he seeks to hold the County liable for the

19   alleged violations of his federal rights.  (*See* Compl. at 8-10 (citing *Monell*, 436 U.S. at

20   690-91).)  To impose liability on a local government entity under Section 1983, a plaintiff

21   must demonstrate (1) the plaintiff was deprived of a constitutional right, (2) the local

22   government entity has a policy, and (3) the policy amounts to deliberate indifference to

1   the plaintiff's constitutional right, and (4) the policy is the moving force behind the

2   constitutional violation.  *Mabe v. San Bernadino Cty., Dep't of Public Soc. Servs.*, 237

3   F.3d 1101, 1110-11 (9th Cir. 2001); *see also Sandoval v. Las Vegas Metro. Police Dep't*,

4   756 F.3d 1154, 1167-68 (9th Cir. 2013).  Defendants argue summary judgment is

5   appropriate on this claim because Mr. Ibarra offers only conclusory allegations but no

6   facts to show the existence of a County policy or custom that caused a violation of his

7   constitutional rights.  (*See* Mot. at 21.)  The court agrees.  Mr. Ibarra does not respond to

8   this portion of Defendants' motion or point to any facts to support his *Monell* claim.  (*See*

9   Resp.)  The court therefore grants Defendants summary judgment on this claim.

10          2.   <u>State Law Claims & Statutory & Common Law Immunity</u>

11          Mr. Ibarra asserts state law claims against the Marshals for false arrest and

12  imprisonment, assault and battery, and intentional infliction of emotional distress.  (*See*

13  Compl. at 10-11.)  In addition, he seeks to hold the County vicariously liable on these

14  claims.  (*See id.* at 12.)  Defendants argue that the Marshals are entitled to statutory and

15  common law immunity on these claims and that Mr. Ibarra lacks sufficient evidence to

16  support them.  (*See* Mot. at 8-11, 21-24.)  The statutory immunity on which Defendants

17  rely comes from RCW 9A.46.090.  (*See* Mot. at 8.)  That statute provides, "A peace

18  office shall not be held liable in any civil action for an arrest based on probable

19  cause . . . , or any other action or omission in good faith under this chapter arising from

20  an alleged incident of harassment."  RCW 9A.46.090.  Further, Washington common law

21  affords law enforcement officers qualified immunity where (1) they are carrying out a

22  statutory duty (2) according to the procedures dictated by statute and superiors, and (3)

1  they acted reasonably.  *Guffey v. State*, 690 P.2d 1163, 1167 (Wash. 1984), *overruled on*

2  *other grounds by Savage v. State*, 899 P.2d 1270 (Wash. 1995).  The court addresses each

3  of Mr. Ibarra's state law claims in turn.

4         *a.  False arrest & imprisonment*

5        "The gist of an action for false arrest or false imprisonment is the unlawful

6  violation of a person's right of personal liberty or the restraint of that person without

7  legal authority . . . ."  *Bender v. City of Seattle*, 664 P.2d 492, 499 (Wash. 1983) ("False

8  arrest and false imprisonment can be distinguished by the manner in which each cause of

9  action arises.  False arrest may be committed only by one who has legal authority to

10  arrest or who had pretended legal authority to arrest.  On the other hand, false

11  imprisonment may exist entirely apart from any purported process of law

12  enforcement . . . ." (internal citations omitted)); *see also Youker v. Douglas Cty.*, 258

13  P.3d 60, 68 (Wash. Ct. App. 2011) ("The gist of false arrest and false imprisonment is

14  essentially the same, viz., the unlawful violation of a person's right of personal liberty,

15  and a false imprisonment occurs whenever a false arrest occurs.").  The existence of

16  "probable cause is a complete defense to an action for false arrest and imprisonment."

17  *Hanson v. City of Snohomish*, 852 P.2d 295, 301 (Wash. 1993) (citing *Bender*, 664 P.2d

18  at 500); *see also Youker*, 258 P.3d at 69.  As discussed above, the Marshals had probable

19  cause to arrest Mr. Ibarra for disorderly conduct.[13]  *See supra* § III.B.1.a.  The court

20

21        [13] The court previously determined that probable cause existed under federal law, not

22  state law.  *See supra* § III.B.1.a.  However, neither the court nor the parties have identified any
   difference between federal and state law on probable cause that would necessitate a different

1    therefore grants summary judgment in Defendants' favor on Mr. Ibarra's false arrest and

2    imprisonment claims.  *See Hanson*, 852 P.2d at 301.

3              *b.   Assault & battery*

4         A battery is an intentional, unpermitted, and harmful or offensive contact with the

5    plaintiff's person.  *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 204 (Wash. 2014).  "An

6    assault is any act of such a nature that causes apprehension of a battery."  *McKenney v.*

7    *Tukwila*, 13 P.3d 631, 641 (Wash. Ct. App. 2000).  Defendants argue that the Marshals

8    are entitled to state law qualified immunity on this claim (Mot. at 22); however, state

9    qualified immunity is unavailable "for claims of assault and battery arising out of the use

10   of excessive force to effectuate an arrest," *Staats v. Brown*, 991 P.2d 615, 627-28 (Wash.

11   2000); *see also Boyles v. City of Kennewick*, 813 P.2d 178, 179 (Wash. Ct. App. 1991)

12   ("Generally, a police officer making an arrest is justified in using sufficient force to

13   subdue a prisoner, however he becomes a tortfeasor and is liable as such for assault and

14   battery if unnecessary violence or excessive force is used in accomplishing the arrest.").

15   Here, the court has already denied summary judgment on Mr. Ibarra's excessive force

16   claim because material issues of fact remain regarding whether the Marshals used a

17   reasonable amount of force in arresting Mr. Ibarra.  *See supra* § III.B.1.b.  In light of that

18

19   conclusion regarding probable cause under Washington law.  (*See* Resp. (citing exclusively
     federal law on the issue of probable cause)); *State v. Gaddy*, 93 P.3d 872, 875 (Wash. 2004)
20   ("The existence of probable cause is determined by an objective standard.  Probable cause exists
     when the arresting officer is aware of facts or circumstances, based on reasonably trustworthy
     information, sufficient to cause a reasonable officer to believe a crime has been committed.  At
21   the time of arrest, the arresting officer need not have evidence to prove each element of the crime
     beyond a reasonable doubt.  The officer is required only to have knowledge of facts sufficient to
22   cause a reasonable person to believe that an offense had been committed." (internal citations
     omitted) (emphasis removed)).

1  ruling, the court likewise denies Defendants' request for summary judgment on Mr.

2  Ibarra's state law assault and battery claim.  *See Hernandez v. Kunkle*, No.

3  C12-0178RSM, 2013 WL 179546, at *8 (W.D. Wash. Jan. 15, 2013) (denying summary

4  judgment against a state law assault and battery claim based on an earlier denial in the

5  same order with respect to a federal excessive force claim); (*see also* Mot. at 15-20, 22

6  (citing exclusively federal law on the issue of excessive force).)

7       The court also rejects Defendants arguments that the Marshals (1) are entitled to

8  statutory immunity and (2) have a complete defense under RCW 9A.16.020(1) with

9  respect to this claim.  (*See* Mot. at 8-11, 22.)  Under RCW 9A.46.090, law enforcement

10  officers have statutory immunity from civil liability for an arrest based on probable cause

11  or any other action taken in good faith arising from an alleged incident of harassment.

12  RCW 9A.46.090.  Yet RCW 10.31.100 prohibits most warrantless arrests for

13  misdemeanors committed outside an officer's presence, even when probable cause exists.

14  *See* RCW 10.31.100.  The Marshals had probable cause to arrest Mr. Ibarra for stalking,

15  but only for misdemeanor stalking.  *See supra* § III.B.1.a.  Defendants have provided the

16  court with no authority or argument on how to reconcile RCW 9A.46.090 and RCW

17  10.31.100.  (*See* Mot.; Reply.)  The court is unwilling at this time to conclude that RCW

18  9A.46.090 overrides RCW 10.31.100 for misdemeanor harassment offenses.  Moreover,

19  because genuine issues of fact remain regarding whether the Marshals used excessive

20  force, genuine issues of fact likewise remain with respect to whether the Marshals acted

21  in good faith.  *See United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) ("An officer

22  who uses excessive force is not acting in good faith."); *State v. Kigano*, 129 Wash. App.

1    1016, 2005 WL 2143645, at *6 (Sept. 7, 2005) ("It is conceivable that an officer might

2    act in good faith and use more force than was objectively necessary, under the

3    circumstances, to arrest a person.").[14]  Accordingly, the court rejects, at least for the

4    purposes of this motion, Defendants' argument that the Marshals are entitled to statutory

5    immunity under RCW 9A.46.090.

6         Furthermore, the Marshals have not shown that they qualify for the defense laid

7    out in RCW 9A.16.020.  That statute provides, in relevant part, that the use of force is not

8    unlawful "[w]henever necessarily used by a public officer in the performance of a legal

9    duty."  RCW 9A.16.120(1).  Excessive force is, by definition, not "necessarily used." *Id.*

10   Therefore, because Defendants are not entitled to summary judgment on Mr. Ibarra's

11   excessive force claim, they are likewise not entitled to summary judgment on his assault

12   claim on the basis of RCW 9A.16.120(1).

13            *c.  Intentional infliction of emotional distress*

14        To establish a claim for intentional infliction of emotional distress under

15   Washington law, a plaintiff must show "(1) extreme and outrageous conduct; (2)

16   intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff

17   of severe emotional distress."  *Birklid v. Boeing Co.*, 904 P.2d 278, 286 (Wash. 1995).

18   The defendant's conduct must be so "outrageous in character, and so extreme in degree,

19   as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

20

21            [14] The court "may consider unpublished state decisions, even though such opinions have

22   no precedential value." *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 (9th Cir. 2003) (citing *Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997)).

ORDER- 27

1    utterly intolerable in a civilized community."  *Grimsby v. Samson*, 530 P.2d 291, 295

2    (Wash. 1975).  Defendants argue that Mr. Ibarra cannot show, among other things, that

3    he actually suffered severe emotional distress.  (*See* Mot. at 23-24.)  The court agrees.

4    Mr. Ibarra offers no defense of this claim in his opposition (*see* Resp.), his declaration

5    says nothing about whether he in fact suffered severe emotional distress (*see* Ibarra

6    Decl.), and he produces no evidence beyond his declaration to support his opposition to

7    Defendants' motion for summary judgment (*see* Dkt.).  The court finds Mr. Ibarra lacks

8    evidence to prove an essential element of his claim for intentional infliction of emotional

9    distress and therefore grants Defendants' motion for summary judgment with respect to

10   this claim.

11            *d.  Vicarious liability*

12            Defendants argue that the County cannot be held vicariously liable for any state

13   law causes of action because all of Mr. Ibarra's state law causes of action must fail on

14   summary judgment.  (*See* Mot. at 24.)  However, the court has denied Defendants'

15   motion for summary judgment with respect to Mr. Ibarra's state law assault and battery

16   claim.  *See supra* § III.B.2.b.  As such, the court denies Defendants' motion with respect

17   to Mr. Ibarra's claim that the County is vicariously liable for the alleged assault and

18   battery.  The court grants the motion with respect to Mr. Ibarra's claim that the County is

19   vicariously liable under this other state law causes of action, all of which the court has

20   dismissed.  *See supra* §§ III.B.2.a., c.

21   //

22   //

1

### IV.    CONCLUSION

2        For the foregoing reasons, the court GRANTS in part and DENIES in part

3    Defendants' motion for summary judgment (Dkt. # 10).  The court GRANTS summary

4    judgment on and DISMISSES with prejudice Mr. Ibarra's federal claims for unlawful

5    seizure and arrest, retaliatory arrest, and local government liability.  The court also

6    GRANTS summary judgment on and DISMISSES with prejudice Mr. Ibarra's state law

7    claims for false arrest and imprisonment and intentional infliction of emotional distress.

8    The court DENIES summary judgment on Mr. Ibarra's federal excessive force claims

9    against the Marshals, as well as his state law assault and battery claims against the

10   Marshals and the County.

11        Dated this 9th day of August, 2016.

12

13

14    _____
       JAMES L. ROBART
15     United States District Judge

16

17

18

19

20

21

22